IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kevin Mellette, ) | |
| ) | Civil Action No.2:11-cv-00241-MBS-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Simon Major, Jr., Director, ) | |
| ) | |
| Defendant. ) | |

The plaintiff, a pretrial detainee[1] proceeding pro se, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendant's Motion for Summary Judgment. (Dkt. No. 35.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The plaintiff brought this action on or about January 24, 2011. (See Dkt. No. 1 at 5 of 5.) On August 1, 2011, Defendant filed a Motion for Summary Judgment. (Dkt. No. 35.) By order filed August 2, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 36.) On or about August 16, 2011, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment. (See Dkt. No. 38.) Defendant thereafter filed a Reply. (Dkt. No. 39.)

**PROCEDURAL FACTS**

Plaintiff, who is currently housed at the Charleston County Detention Center ("CCDC"), alleges claims pursuant to 42 U.S.C. § 1983. (See Dkt. No. 1.) Although Plaintiff

---

[1] It is unclear whether Plaintiff remains a pretrial detainee. However, at all times relevant to the instant case, Plaintiff was a pretrial detainee.

is currently housed at CCDC, the facts giving rise to the instant complaint occurred while Plaintiff was housed at Sumter-Lee Regional Detention Center ("SLRDC"). Plaintiff alleges that because the "B-Pod [(also known as Bravo-Pod) at SLRDC] is unclean and is not clean[ed] properly [he] caught staff [sic] infection." (Compl. at 3.) According to Plaintiff, "[t]hat comes from germs and nastiness." (Id.) Plaintiff states (verbatim), "I went to Bravo/B-Pod for a discipline hearing I was place in B214 on the 12-29-10 I was place in B107 on the 12-30-10 thats when I got the Infection." (Id.) Plaintiff contends that he "caught this infection due to [his] living conditions [being] poor." (Id.) Plaintiff also complains that he "was in B-107 and [his] hot water did not work." (Id.) In the "Relief" section of his Complaint, Plaintiff states,

> Come clean this place up. And order them to pay for pain and suffering for catching stah-infection [sic]. I would also like for the courts to come evaluate this facility. Because, it is truly a disgrace and very poor to[] live in. I really don't see how this facility could pass state inspections, when, it's very nasty.

(Id. at 5.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id.

2

(quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants filed a Motion for Summary Judgment on August 1, 2011. (Dkt. No. 35.) The undersigned will address the Defendant's arguments below.

**A. Exhaustion of Administrative Remedies**

In his Motion for Summary Judgment, Defendant first asserts that Plaintiff's claims fail pursuant to the Prison Litigation Reform Act ("PLRA") because Plaintiff did not exhaust his administrative remedies. (See Mem. in Supp. at 3.) The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[2] Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) (exhaustion required even though the plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 18 Fed. App'x 243 (4th Cir. Sept. 18, 2001) (applying Booth v. Churner to affirm the district court's denial of relief to the plaintiff).

---

[2]Pursuant to 42 U.S.C. § 1997e(h), the term "prisoner" "means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." Plaintiff, as a pretrial detainee, was therefore required to exhaust his administrative remedies prior to filing suit. See Rutland v. Dewitt, No. 8:09-13-SB, 2010 WL 288217, at *5 (D.S.C. Jan. 25, 2010); Bunch v. Nash, No. 4:07-3674-HFF-TER, 2009 WL 329884, at *4, n .2 (D.S.C. Feb. 10, 2009); Tate v. Anderson, No. 8:05-3085-HMH-BHH, 2007 WL 28982, at *4 (D.S.C. Jan. 3, 2007); United States v. Al-Marri, 239 F. Supp .2d 366, 367-68 (S.D.N.Y.2002) (holding pretrial detainee required to exhaust administrative remedies under PLRA before filing suit).

3

Defendant presented the Affidavit of Daryl McGhaney, Assistant Director of the SLRDC. (See McGhaney Aff. ¶ 1; Dkt. No. 35-2.) McGhaney stated therein,

> 5. I have . . . reviewed the Plaintiff's inmate file. See Exhibit A. His inmate file includes all grievances filed at the SLRDC.
>
> 6. The Plaintiff's grievances included in his file have all been answered in accordance with SLRDC policy.
>
> 7. An inmate grievance form is to be turned into the dorm officer for review by the appropriate SLRDC individual. Under SLRDC policy, the SLRDC official has up to 30 days to answer the grievance.
>
> 8. It appears from the review of the Plaintiff's grievances that he first filed a request to receive his medical records regarding an alleged staph infection on January 16, 2011. Medical complaints are referred to medical to be answered. The Plaintiff did not reference the conditions of Bravo Pod and simply requested his medical records. See Exhibit A, Bates Number 8703-A-25. The Plaintiff filed an almost identical request on January 17, 2011. See Exhibit A, Bates Number 8703-A-25.
>
> 9. The Plaintiff has filed numerous grievances regarding the conditions of his dorm or general cleanliness. However, he did not file a single grievance regarding these issues prior to January 24, 2011.

(McGhaney Aff. ¶¶ 5-9.)

Exhibit A to McGhaney's Affidavit reveals that Plaintiff filed four grievances prior to January 24, 2011, the date Plaintiff filed his Complaint. In SLRDC Grievance No. 05678, dated January 16, 2011, Plaintiff states that he "would like a copy of [his] medical record" and wants to know "if [he] tested positive for staff [sic] infection and what caused [him] to contract this infection." (Dkt. No. 35-3 at 26 of 33.) The "Action Taken" section of this grievance states,

> Medical cannot give inmates medical records. If you have a specific question about your condition, please ask to speak with [Nurse Geddings]. [She] will try to see you today when you come to medical for your dressing change.

(Id.) Plaintiff again asked for his medical records in SLRDC Grievance No. 05681, dated January 17, 2011. Therein, Plaintiff states,

> Captain Gilyard I'm writing concerning my medical condition. The nurse said I'd tested positive for staff [sic] infection. I thought it was a spider bite. I would like a copy of my medical record of me testing positive for staff [sic] infection and how I contracted the infection.

(Dkt. No. 35-3 at 25 of 33.) In the "Action Taken" section of the grievance, the following appears:

> Nurse Geddings has informed you that this facility does not give inmates a copy of medical records. Nurse Geddings has also reviewed skin infections with you in detail. No one can tell you how you got a skin infection. Your wound has healed. You have been treated with the approved antibiotics ordered by the doctor. The lab report that indicated that you had an infection is a simple lab result. It does not have any other information on it. Every nurse has given you information verbally on this subject.

(Id.) On January 18, 2011, in SLRDC Grievance No. 06094, Plaintiff states that he "wrote . . . on . . . 1-17-11 so [he is] writing again," requesting a copy of his medical records from the time he "was booked" to date. (Id. at 28.) In SLRDC Grievance No. 06057, dated January 20, 2011, Plaintiff asks for his copy of Grievance No. 05678. (Id. at 27.) Several other grievances were filed *after* Plaintiff filed the instant Complaint.[3]

---

[3]Exhibit A to McGhaney's Affidavit reveals Plaintiff filed the following grievances after January 24, 2011:
   a. In SLRDC Grievance No. 08402, dated March 8, 2011, Plaintiff complains about cleanliness and states that he got staph infection because SLRDC is not clean. He also states that the "showers are nasty" and the "curtains of the showers are very nasty."
   b. Plaintiff states in SLRDC Grievance No. 8456, dated March 30, 2011, that he "wrote on 3-8-11 about the showers and washing our blankets." Plaintiff complains that the blankets have not been washed in over forty days and that mold is growing on the wall in the showers. Plaintiff further complains of "food and grit on the walls."
   c. In SLRDC Grievance No. 08474, dated April 4, 2011, Plaintiff complains that the shower was not sanitized after an inmate with staph used it.
   d. In SLRDC Grievance No. 08489, dated April 7, 2011, Plaintiff complains about cleanliness at SLRDC and states that "mold [is] still in the shower . . . ."
   e. Plaintiff complains about lack of response in SLRDC Grievance No. 08522, dated April 19, 2011. Plaintiff states that he has not received responses to grievances dated 4/2/11, 4/4/11, and 4/7/11. (The "Action Taken" section shows responses were given on April 6 and April 12 of 2011.)
   f. In SLRDC Grievance No. 08560, dated June 7, 2011, Plaintiff asserts that he has not gotten a response to grievance numbers 08522, 08489, or 08474,

The undersigned recommends granting summary judgment to Defendant because there is no genuine issue of material fact over whether Plaintiff exhausted his administrative remedies. The undisputed facts show that Plaintiff failed to so exhaust prior to filing suit. In the four grievances Plaintiff filed prior to filing the instant lawsuit, nowhere does he complain about his living conditions. Instead, Plaintiff repeatedly asks for a copy of his medical records and notes that he had a staph infection. Although Plaintiff continued to file grievances after he filed suit, a plaintiff is not permitted to exhaust his administrative remedies while his lawsuit is pending; the PLRA requires administrative remedies to be exhausted prior to filing suit. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) (prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("The prisoner ... may not exhaust administrative remedies during the pendency of the federal suit."); Grier v. Mitchell, No. 9:11-0042-TMC, 2011 WL 5517242, at *1 (D.S.C. Nov. 1, 2011) ("[E]xhaustion is a precondition to filing suit in federal court."

---

stating that "[i]t has been about a month." Plaintiff also complains that there is a "fellow in 126" who "defecates and wipes it on the wall and windows," and the same broom used in this inmate's room to clean up the waste is used in everyone else's room.
Plaintiff attaches copies of several additional grievances to his Response in Opposition to the Motion for Summary Judgment. For example, in SLRDC Grievance No. 10108, dated May 18, 2011, Plaintiff complains that he has not been able to take a shower in four days, the water is not hot enough, and he has not received a response to certain grievances. (Dkt. No. 38-2 at 8 of 28.) On May 21, 2011, Plaintiff complained about the blankets not being washed, the lights staying on "24 hours," and not having received a response to certain grievances. (Id. at 9.) In SLRDC Grievance No. 10318, dated June 12, 2011, Plaintiff complains that too many days are passing between showers but notes "they are finally cleaning the floors in B-pod." (Id. at 10.) On June 15, 2011, Plaintiff complained that Lt. McMillan answered grievances that were written to McGhaney. (Id. at 11.) On August 2, 2011, Plaintiff complained that his shower had been taken away because he covered his light. (Id. at 12.) On August 3, 2011, Plaintiff again complains that his shower was taken away because his light was covered. (Id. at 13.) Plaintiff also attaches copies of grievances–many of which are nearly impossible to read–filed by other inmates. (See id. at 14-28.)

6

(citing Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008))); Johnson v. Ozmint, 567 F. Supp. 2d 806, 815 (D.S.C. 2008).

In his Response in Opposition, Plaintiff complains that he "ha[s] some grievances that have taken well over the appropriate time to answer." (Dkt. No. 38 at 3 of 8.) "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. "[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." Zander v. Lappin, 415 Fed. App'x 491, 492 (4th Cir. Mar. 10, 2011) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). The district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Id. (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).

The undersigned recommends concluding that defects in Plaintiff's exhaustion of administrative remedies were not procured from the action or inaction of prison officials. As noted above, ***none*** of Plaintiff's grievances filed prior to his filing suit concerned the conditions of the SLCRDC. Furthermore, according to McGhaney's Affidavit, "[a]n inmate grievance form is to be turned into the dorm officer for review by the appropriate SLRDC individual. Under SLRDC policy, the SLRDC official has up to 30 days to answer the grievance." (McGhaney Aff. ¶ 7.) Many times when Plaintiff filed a grievance complaining about the lack of response, the thirty day time period had not expired. (See, e.g., Dkt. No. 35-3 at 20 of 33.) Finally, while Plaintiff may have disagreed with SLRDC's response to his grievances, from a review of the "Action Taken" section of his grievances, it appears that SLRDC employees did respond in some fashion to Plaintiff's grievances. (See Dkt. No. 38-2 at 1-13 of 28.) On these facts, the undersigned recommends concluding that the defects in

7

Plaintiff's exhaustion were not procured from the action or inaction of prison officials, and that Defendant is entitled to summary judgment.

**B. Personal Involvement of Defendant**

Defendant also moved for summary judgment on the grounds Plaintiff "is unable to establish any personal involvement on the part of Defendant Simon Major on any theory of liability." (Mem. in Supp. at 8.) Defendant contends he is entitled to summary judgment because he had no "personal involvement with the Plaintiff at any time," and because Plaintiff is "unable to establish a theory of supervisory liability against Defendant Major." (Id.) The doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-99 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). However, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Id. at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of

documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Id. (citations omitted).

Although Plaintiff contends in his Response in Opposition that Defendant Major "completely control[s]" unit Bravo and "knows everything [that] happens," Plaintiff offers no support for this contention other than his assertion that Major is in charge. (Dkt. No. 38 at 4-5 of 8.) It is well-settled, however, that Major cannot be held liable *solely* because of his position. Vinnedge, 550 at 927-99. Instead, in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Plaintiff offers no evidence of Major's personal involvement, and there is no evidence in the record that would support liability under a theory of supervisory liability. Therefore, in the event that the District Judge concludes Defendant is not entitled to summary judgment on the grounds of failure to exhaust, the undersigned recommends concluding that Defendant Major cannot be held liable for the alleged constitutional violations.

## CONCLUSION

Wherefore, it is RECOMMENDED that Defendant's Motion for Summary Judgment (Dkt. No. 35) be GRANTED.

IT IS SO RECOMMENDED.

                                                s/Bruce Howe Hendricks
                                                United States Magistrate Judge

January 24, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).